UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                                          CRIMINAL NO. 3:14-CR-58-DPJ-LRA

SAMER N'SER

ORDER

Defendant Samer N'Ser asks the Court to terminate his supervised release. Mot. [84]. The Government opposes his request. Resp. [85]. For the following reasons, N'Ser's motion for early termination of supervised release is denied.

I.      Facts and Procedural History

On March 4, 2014, N'Ser was charged in a nine-count indictment with securities fraud and conspiracy to commit securities fraud. N'Ser pleaded guilty to a single conspiracy charge on January 27, 2015, and on February 26, 2016, the Court issued a below-guidelines sentence of 37 months' incarceration to be followed by a three-year term of supervised release. The Judgment of Conviction also ordered N'Ser to pay $14,984,389.35 in restitution, in equal monthly installments of $1,000 a month to commence 60 days after his release from imprisonment. N'Ser's liability for the restitution payments is joint and several with his co-defendant, Mark E. Rodgers. Am. J. [76] at 5–6.

N'Ser completed his term of incarceration and began his term of supervised release on December 28, 2019. On May 18, 2020, the Court modified the terms of N'Ser's supervision by reducing the ordered restitution payments from $1,000 monthly to "not less than $200.00 monthly" because "N'ser is unable to afford the original court-ordered $1,000.00 monthly

restitution payment but has consistently contributed $200.00 monthly towards his restitution amount." Order [83] at 1.

On June 30, 2020, N'Ser filed his motion for early termination of supervised release, which is set to expire on or about December 27, 2021. He "requests that his supervised release be terminate[d] so that he may travel and/or relocate for employment purposes. Furthermore, the defendant wishes to travel to visit his father who he has not seen in 13 years." Mot. [84] ¶ 3. N'Ser represents that "[t]he United States Probation Officer, Greg Walker, has been contacted and takes no position on this motion." *Id.* ¶ 6. The Government, on the other hand, opposes N'Ser's motion.

II.     Analysis

N'Ser's request arises under 18 U.S.C. § 3583(e)(1), which provides:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

Among the factors the statute "directs the court to take into account" are "the nature of the offense and the history of the offender, as well as any implications for public safety and deterrence"—"largely the same considerations the court must assess when imposing the original sentence." *United States v. Jeanes*, 150 F.3d 483, 484 (5th Cir. 1998). "[T]he statute confers broad discretion." *Id.*

N'Ser never directly addresses the § 3583(e)(1) factors, asserting generally that he "has no need for programming or treatment[,] has made strides towards payment of his restitution obligation and will continue to do so even after supervision is completed[, and] has complied with all the conditions of supervised release." Mot. [84] ¶ 5. For its part, the Government

focuses its statute-based argument on § 3553(a)(7), which requires the Court to consider in sentencing "the need to provide restitution to any victims of the offense."

The Government is correct.  As of July 8, 2020, N'Ser and Rodgers had collectively paid back less than $10,000 of the original $14,884,389.35 restitution judgment.  So, any "strides" N'Ser claims toward compensating his victims are infinitesimal.  The Government also notes that while

> satisfaction of the $14.9 million restitution order likely is unrealistic during the remaining portion of the imposed term of supervised release[,] . . . supervision by the U.S. Probation Office is necessary to protect the interests of the United States and the [303] victims in recovering as much of the fraudulently obtained money as possible while [N'Ser] remains under the jurisdiction of this Court.

Resp. [85] at 4.  Finally, the Government says N'Ser has family ties in a foreign country and would be free to leave if granted this request, making enforcement more difficult.  *Id.* at 5.  Indeed, the PSR and N'Ser's sentencing memorandum state that he has family ties in two foreign countries.  N'Ser failed to file a reply and therefore never responded to these meritorious arguments.  Section 3553(a)(7) weighs against terminating N'Ser's supervised release.

The Government also addresses the stated bases for the requested termination:  N'Ser's desire to travel and/or relocate and to visit his father.  As the Government observes, N'Ser offers only a bare-bones explanation for his requests.  Starting with travel, the Court does not know the reason for the desired travel (other than to visit his father) or the destination.  And N'Ser does not explain why it is now important to see his father when he has not done so in 13 years.  But assuming the requests are legitimate, the Government correctly argues that terminating supervision is unnecessary because "with prior approval by the U.S. Probation Office," travel requests "may be granted during a term of supervised release."  *Id.* at 1.

Turning to his desire to relocate for employment, the Government correctly argues that N'Ser provided "no information . . . as to any purported new employment opportunities [or]

3

demonstrate[ed] that employment in such unidentified destinations is actually available and more lucrative than his current employment." *Id.* at 2.  N'Ser's failure to identify the employment or its location gives the Court considerable pause.  N'Ser and his counsel presumably know that if he procures a more lucrative job in another jurisdiction, he could request a transfer of supervision.  Omitting where he wants to relocate at least suggests a desire to move to a foreign country where there is no supervision.

At bottom, N'Ser stole nearly $15 million from 303 victims.  Yet he received a minimal term of incarceration and now wants the Court to halve his term of supervised release.  His victims still await restitution, and the interest of justice weighs against his request.

III.    Conclusion

For the foregoing reasons, N'Ser's Motion for Early Termination of Supervised Release [84] is denied.

**SO ORDERED AND ADJUDGED** this the 7th day of August, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE